IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **IP INNOVATION L.L.C. and TECHNOLOGY LICENSING CORPORATION,** § § § § | |
| Plaintiffs, § § | **CASE NO. 2:07 CV 503** **PATENT CASE** |
| vs. § § | |
| **GOOGLE, INC.,** § § | |
| Defendant. § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Google, Inc.'s ("Google") Motion to Dismiss for Lack of Standing (Docket No. 50). Having considered the parties' oral arguments and written submissions, the Motion is **DENIED**.

**BACKGROUND**

IP Innovation L.L.C. ("IPI") and Technology Licensing Corporation ("TLC") (collectively, "Plaintiffs") acquired rights in eleven patents, including U.S. Patent Nos. 5,675,819 and 5,276,785 (collectively, "the patents-in-suit"), from Xerox Corporation ("Xerox") through a settlement of a separate patent dispute between Plaintiffs and Xerox. On November 15, 2004, Plaintiffs and Xerox settled their dispute by entering into a "License Agreement" which required Xerox to assign the patents-in-suit to Plaintiffs in accordance with a "Patent Assignment Agreement" ("the Agreement") executed contemporaneously with the "License Agreement." Plaintiffs, Xerox, and Xerox's wholly owned subsidiary, Palo Alto Research Center Inc. ("PARC") were all parties to the Agreement. In March 2007, the parties amended the Agreement modifying the payment and reports section of the

agreement. Google claims the Agreement did not transfer all substantial rights in the patents-in-suit to Plaintiffs and moves to dismiss Plaintiffs' claims for lack of standing.

## APPLICABLE LAW

Federal Rule of Civil Procedure 12(b)(1) authorizes the dismissal of a case for lack of subject matter jurisdiction when the district court lacks the statutory and constitutional power to adjudicate the case. *See Home Builders Ass'n of Mississippi, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Courts analyze Rule 12(b)(1) motions to dismiss under the same standard as a motion to dismiss under Rule 12(b)(6). *See id.* When ruling on a motion to dismiss for lack of subject matter jurisdiction, a court may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Den Norske Stats Oljeselskap As v. HeereMac v.o.f.*, 241 F.3d 420, 424 (5th Cir. 2001); *see also Clark v. Tarrant County,* 798 F.2d 736, 741 (5th Cir. 1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). Once a defendant files a motion to dismiss under Rule 12(b)(1) and challenges jurisdiction, the party invoking jurisdiction has the burden to establish subject matter jurisdiction. *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). Courts only grant motions to dismiss when it is clear the claimant can prove no set of facts in support of its claims that would entitle it to relief. *See Home Builders Ass'n of Mississippi, Inc.,* 143 F.3d at 1010.

A court lacks subject matter jurisdiction over a cause of action if the plaintiff lacks standing to bring the cause of action. *Bhandari v. Cadence Design Sys., Inc.*, 485 F. Supp. 2d 747, 750–51 (E.D. Tex. 2007) (Davis, J.). A plaintiff has constitutional standing to pursue a patent infringement action if it shows: (1) the defendant's alleged infringement causes the plaintiff an injury in fact; (2)

2

that the injury is fairly traceable to the alleged misconduct of the defendant; and (3) that a favorable decision is likely to redress the injury. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *Intellectual Property Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1345–47 (Fed. Cir. 2001). To prove an "injury in fact, " the plaintiff must show the alleged infringer invaded a legally protected interest which is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *See Lujan*, 504 U.S. at 560 (internal quotations omitted). Parties that hold exclusionary rights and interests in a patent have constitutional standing to sue infringers. *See Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339 (Fed. Cir. 2007).

A party with constitutional standing that possesses all substantial patent rights is an effective patentee and has prudential standing to sue infringers without joinder of others who suffer a legal injury from infringement and possess substantial patent rights. *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1250 (Fed. Cir. 2000). If a party has constitutional standing but does not possess all substantial patent rights, the party lacks prudential standing and generally must sue as a co-plaintiff with other parties who suffer a legal injury from infringement and possess rights to the patent. *See Intellectual Property Dev.*, 248 F.3d at 1348. A plaintiff cannot cure constitutional standing defects after it files suit, but a plaintiff with constitutional standing may cure prudential standing defects after it files suit. *See id.; IpVenture, Inc. v. ProStar Computer, Inc.*, 503 F.3d 1324, 1326–27 (Fed. Cir. 2007); *Morrow*, 499 F.3d at 1344.

Only a patentee has standing to bring a suit for patent infringement in its own name. *Textile Prods., Inc.,* 134 F.3d 1481; *see* 35 U.S.C. § 281 (2000) ("A patentee shall have remedy by civil action for infringement of his patent."). A "patentee" includes "'not only the patentee to whom the patent issued but also the successors in title to the patentee.'" *Aspex Eyewear, Inc. v. Miracle*

3

*Optics, Inc.*, 434 F.3d 1336, 1340 (Fed. Cir. 2006) (quoting 35 U.S.C. § 100(d)). The term "assignment" has a particular meaning in patent law, implying a formal transfer of title to the patent-in-suit. *See* 35 U.S.C. § 100(d). When a patentee transfers title in a patent by assignment, the assignee is the effective patentee under the Patent Act and the assignee has standing to sue for infringement in its own name. *Aspex*, 434 F.3d at 1340.

Whether a transfer is an assignment or a license is determined by the transfer's legal effect and not by how the parties characterize the transfer. *Waterman v. Mackenzie*, 138 U.S. 252, 256 (1891). To determine whether an agreement confers standing on the transferee, courts focus on the substance of the transferred patent rights and the parties' intentions. *Vaupel Textilmaschinen KG v. Meccanica Euro Italia Spa*, 944 F.2d 870, 875 (Fed. Cir. 1991); *Intellectual Property Dev.*, 248 F.3d at 1342; *Propat Int'l Corp. v. RPost, Inc.*, 473 F.3d 1187, 1189–90 (Fed. Cir. 2007). In making such a determination, it is helpful to focus on each party's collection of sticks within the bundle of patent rights as a result of the agreement. *Vaupel*, 944 F.2d at 875; *Intellectual Property Dev.*, 248 F.3d at 1342; *see also Morrow*, 499 F.3d at 1338, 1341 n.8. A transfer is an assignment if it grants "the whole of the patent right, or of an undivided part of the right, or of all rights in a specified geographical region." *Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1131 (Fed. Cir. 1995) (citing *Waterman*, 138 U.S. at 255). The substantial rights recognized by case law include the right to indulge infringers, the right to exclude others, and the right to transfer. Any lesser transfer of rights is a license. *Abbott Labs.*, 47 F.3d at 1131.

## ANALYSIS

**Constitutional Standing**

Google asserts that Plaintiffs lack sufficient rights in the patents-in-suit to have standing to

sue for infringement. Plaintiffs have constitutional standing if their interest in the patents-in-suit includes sufficient exclusionary rights such that they suffer an injury in fact from infringing activities. *See Morrow,* 499 F.3d at 1341. At the time of filing this suit, Plaintiffs had entered into the Agreement with Xerox and PARC and had all rights to the patents-in-suit, subject to the following rights retained or received by Xerox and PARC under the Agreement: Xerox and PARC's non-exclusive licenses to practice the patents-in-suit for their own business, Xerox and PARC's right to have their interest in the patents-in-suit assigned along with the patents-in-suit, PARC's right to sublicense to any entity for whom it is conducting research and any entity formed or spun-out by PARC, PARC's right to conclude licensing negotiations, PARC's right to add entities to its "Business Arrangements" list upon consultation and good faith negotiation with Plaintiffs, and Xerox and PARC's economic interest and reversionary rights in the patents-in-suit.

Plaintiffs have constitutional standing to sue Google for patent infringement. Google's alleged infringement causes Plaintiffs an injury in fact because Plaintiffs have the sole right to sue infringers and recover for past, present, and future damages for infringement, the ability to license the patents-in-suit, and the ability to assign the patents-in-suit. Plaintiffs hold sufficient exclusionary rights in the patents-in-suit to suffer a legal injury in fact. *See Morrow,* 499 F.3d at 1339. Further, Google's alleged infringement causes damage to Plaintiffs' proprietary interest in the patents-in-suit and damages or injunctive relief will redress Plaintiffs' injury. Accordingly, Plaintiffs have constitutional standing to sue Google.

**Prudential Standing**

If a plaintiff is found to have constitutional standing and also possesses all substantial patent rights, the plaintiff "is an effective patentee and has prudential standing to sue infringers." *VirnetX*

*Inc. v. Microsoft Corp.*, No. 6:07-cv-80, 2008 U.S. Dist. LEXIS 94854, at *6 (E.D. Tex. June 3, 2008) (citing *Speedplay*, 211 F.3d at 1250). Here, Plaintiffs have prudential standing to sue Google because Xerox and PARC did not retain substantial rights in the patents-in-suit under the Agreement.

In determining whether the Agreement transferred all substantial rights in the patents-in-suit to Plaintiffs, the Court must focus not only on the substance of the transferred rights, but also on the parties' intentions. The Court therefore must examine the Agreement's provisions to ascertain the substance of the rights transferred to Plaintiffs and those retained or received by Xerox and PARC. As noted above, Plaintiffs have the sole right to sue infringers and recover for past, present and future damages for infringement, the ability to license the patents-in-suit, and the ability to assign the patents-in-suit—all substantial rights recognized by case law.[1] *See Mediatek, Inc. v. Sanyo Electric Co. Ltd.,* 2007 WL 5186792, at *4 (E.D. Tex. April 16, 2007).

The right to sue for infringement has been found to be "particularly dispositive" in deciding whether a party has standing to sue for infringement. *Vaupel*, 944 F.2d at 875. Google cites to the Federal Circuit's decision in *Propat Int'l Corp. v. RPost, Inc.* for the proposition that a recipient of the rights to sue for infringement and grant licenses to third parties is merely an agent and not a person with standing to sue for infringement. 473 F.3d at 1192. In *Propat*, the Federal Circuit determined that a purported exclusive licensee lacked standing to sue for infringement because the original patent holder had not conveyed all substantial rights in the patent to the exclusive licensee.

---

[1] In addition to these rights acquired by Plaintiffs under the Agreement, Plaintiffs are also "obligated to pay such fees as necessary to keep the Assigned Patents in force." Agreement, p. 7, § 6.1.5. Although Xerox paid the maintenance fees for the patents-in-suit directly to the USPTO, Plaintiffs reimbursed Xerox for these fees. Ultimately, the responsibility to pay maintenance fees fell on Plaintiffs and is yet another indication of patent ownership. *See Propat*, 473 F.3d at 1191; *Mentor H/S, Inc. v. Medical Device Alliance, Inc.*, 240 F.3d 1016, 1018 (Fed. Cir. 2001).

*Id*. at 1192–93. *Propat* dealt with a transfer that severely restricted the licensee's rights to license and sue for infringement. The agreement in *Propat* specifically provided that the original patent holder continued to be the owner of the patent. *Id*. at 1191. Further, the original patent holder in *Propat* retained substantial control over the licensee's licensing and litigation decisions and had an absolute veto right to prevent assignment of the licensee's interests in the patent. *Id*.

The factual differences between *Propat* and this case dictate a different outcome. Unlike the facts in *Propat*, Plaintiffs need not obtain Xerox and PARC's consent to enforce the patents-in-suit, nor do Xerox and PARC have any right to participate in Plaintiffs' litigation decisions. Further, Xerox and PARC have no right to veto any transfer of Plaintiffs' interests in the patents-in-suit. As discussed more fully below, the rights retained or received by Xerox and PARC are not as great as those retained by the original patent holder in *Propat*, and any restrictions Xerox and PARC may have on Plaintiffs' right to enforce the patents-in-suit do not substantially affect Plaintiffs' standing to sue for infringement. Under the Agreement, Xerox and PARC have the following rights to the patents-in-suit.

*Non-exclusive Licenses to Practice Patents-in-Suit for Their Own Business*

Under the Agreement, Xerox and PARC received "fully paid-up, royalty-free, non-transferable, worldwide, perpetual, non-exclusive licenses" under the patents-in-suit "for the conduct of its own business." Agreement, p. 2, §§ 2.1, 2.3. Google argues that this reservation of a continued right to exploit the patents-in-suit, coupled with the pre-existing licenses under the patents-in-suit render the transfer a non-exclusive license rather than an assignment. Plaintiffs point out that these non-exclusive licenses support the argument that Plaintiffs received all rights in the patents-in-suit. That is, IPI and TLC had to have first obtained the right to exclude Xerox and PARC

7

from practicing the patents-in-suit before granting back to Xerox and PARC a non-exclusive license. This Court has previously noted "[a] non-exclusive license by definition does not vest any substantial patent right in the licensee," and thus, a patent assignment is not necessarily defeated by an existing non-exclusive license. *Mediatek*, 2007 WL 5186792, at *6–7. Therefore, this is not a substantial right retained or received by Xerox and PARC.

*Right to Have Interest in Patents-in-Suit Assigned Along With Patents-in-Suit*

Under the Agreement, Plaintiffs agreed not to assign or grant control over the patents-in-suit "without also assigning its rights and obligations to PARC and Xerox under th[e] Agreement." Agreement, p. 3, § 2.4. Citing to *Propat*, Google argues that this amounts to a restriction on the right to transfer and is a strong indication that Plaintiffs did not receive all substantial rights under the patents-in-suit. Unlike the original patent holder's absolute veto right in *Propat*, which the *Propat* court noted was "particularly significant" in that case, Plaintiffs need not obtain Xerox or PARC's consent to assign their interests in the patents-in-suit. *Propat*, 473 F.3d at 1191. The only requirement under the Agreement is that upon Plaintiffs' assignment of its interest to a third party, PARC and Xerox's rights and obligations granted under the non-exclusive license must be honored by the third party. The Federal Circuit found an even greater restriction on assignment, requiring the consent of the grantor before assignment, did not significantly restrict the scope of rights obtained by the grantee. *See Speedplay*, 211 F.3d at 1251–52. Thus, the requirement that a third party assignee honor Xerox and PARC's rights and obligations under the Agreement is reasonable. Accordingly, Plaintiffs obtained the substantial right to transfer its rights in the patents-in-suit. *See Mediatek*, 2007 WL 5186792, at *6.

*Rights to Sublicense, Conclude Licensing Negotiations, and Add to "Business Arrangements" List*

Under the Agreement, PARC retained or received a right to sublicense the patents-in-suit "to any entity for whom it is conducting sponsored research . . . so long as such a sublicense is necessary for the conduct or benefit of such research or the full exploitation of the results of such research," and to any entity formed or spun-out by PARC. Agreement, p. 3, § 2.5. The Agreement also provides that any license inquiries concerning the patents-in-suit must be referred to the Plaintiffs. Agreement, pp. 3–4, § 2.6.4. However, PARC has the right under the Agreement to "conclude [licensing] negotiations" if Plaintiffs are unable to do so within six months of the referral. *Id.* Further, the Agreement prevents Plaintiffs from approaching and transacting business with entities on its "Business Arrangements" list and provides that the list may be changed "upon consultation and good faith negotiations between PARC and [Plaintiffs]." Agreement, p. 3, § 2.6.2. Google argues that as a result of these provisions, Xerox and PARC have the right to indulge infringement and the ability to prevent Plaintiffs from enforcing the patents-in-suit. Google further equates these rights to the veto power the original patent holder held over the licensee's licensing and litigation decisions in *Propat*. Although Xerox and PARC may maintain some control over Plaintiffs' right to enforce the patents-in-suit and indulge infringement, this control is not sufficient to defeat Plaintiffs' substantial patent rights.

PARC's right to sublicense to entities for whom it is conducting research is limited to instances where the sublicense is "necessary" to conduct or benefit the research or to fully exploit the results of the research. Agreement, p. 3, § 2.5. In addition, PARC's ability to grant sublicenses to its successive business entities is a reasonable right granted by Plaintiffs under the Agreement. *Id.* Further, although Google argues that there is no restriction on PARC's right to conduct licensing negotiations, PARC must initially refer any licensing inquiries to Plaintiffs and may only *conclude*

9

licensing negotiations if Plaintiffs are unable to do so within six months of the referral. Agreement, pp. 3–4, § 2.6.4.

The provision preventing Plaintiffs from approaching and transacting business with entities on its "Business Arrangements" list does not defeat Plaintiffs' rights to enforce the patents-in-suit. In *Mediatek, Inc. v. Sanyo Electric Co. Ltd.*, this Court found that a provision that prohibited the assignee from asserting the patents against certain licensees in good-standing did not actually prevent the assignee from asserting the patents against these entities, it merely created a breach of contract claim against the assignee if it violated the provision. 2007 WL 5186792, at *7. The "Business Arrangement" provision is similar to the provision in the *Mediatek* case and thus does not affect Plaintiffs' rights to enforce the patents-in-suit. Furthermore, the provision allowing PARC to add entities to its Business Arrangements list only "upon consultation and good faith negotiations" with Plaintiffs further supports the argument that Plaintiffs acquired the substantial right to enforce the patents-in-suit.

*Economic Interest and Reversionary Rights in Patents-in-Suit*

Under the Agreement, PARC is entitled to what amounts to a 50% share of the Net Revenues received from the licensing, enforcement, sale, or transfer of the patents-in-suit, minus costs and expenses associated with licensing and litigation involving the patents-in-suit. *See* Agreement, pp. 1, 4, §§ 1.2, 3.1. PARC also has the ability to terminate the Agreement and demand assignment of the patents-in-suit back to Xerox if Plaintiffs fail to meet certain revenue requirements by certain target dates. *See* Agreement, p. 4, § 3.3. Both parties cite to this Court's decision in *VirnetX Inc. v. Microsoft Corp.* as support for their respective positions. 2008 U.S. Dist. LEXIS 94854. Plaintiffs assert that under *VirnetX*, PARC's economic interest in the patents-in-suit is a neutral

factor in determining whether Plaintiffs acquired all substantial rights under the patents-in-suit. Google argues that based on *VirnetX* and *Propat*, Xerox and PARC's economic interest and reversionary rights in the patents-in-suit are both strong indications that Xerox and PARC retained substantial rights in the patents-in-suit.

In *Propat*, the court noted that "the fact that a patent owner has retained a right to a portion of the proceeds of the commercial exploitation of the patent . . . does not necessarily defeat what would otherwise be a transfer of all substantial rights in the patent." *Propat*, 473 F.3d at 1191. However, because the agreement in *Propat* expressly provided that the original patent owner would continue to be the owner of the patent, the court found that the retained economic interest in the patent was consistent with the retained ownership rights of the original patent owner. *Id.* Further, the *Propat* court indicated that the retention of reversionary rights in the patents-in-suit, "although not dispositive," was another indication that the original patent owner retained a significant ownership in the patent. *Id.* at 1192.

In *VirnetX*, this Court determined that in *Propat*, it was "[t]he combination of the grantor's retained economic interest and the substantial control over [licensing and litigation] decisions" that defeated the grantee's standing to sue. 2008 U.S. Dist. LEXIS 94854, at *14. Further, this Court noted that although a grantor's reversionary rights indicate a retained interest in the patents-in-suit, they are not dispositive. *Id.* at *17; *see also Vaupel*, 944 F.2d at 875 (noting that termination provisions "are entirely consistent with an assignment"). In *VirnetX*, the grantor's reversionary rights and economic interest in the patents were coupled with a retained right to influence or control the assignee's enforcement decisions. *Id.* at *18. Thus, whether Xerox and PARC's economic interest and reversionary rights deprive Plaintiffs of all substantial rights under the patents-in-suit depends

11

on whether Xerox and PARC maintain sufficient control over decisions that affect the rights to the patents-in-suit. Because the Court finds that Xerox and PARC do not have substantial influence or control over Plaintiffs' ability to enforce the patents-in-suit and indulge infringement, Xerox and PARC's economic interest and reversionary rights in the patents-in-suit do not mandate a finding that Plaintiffs did not acquire all substantial patent rights under the Agreement.

## CONCLUSION

None of the rights retained or received by Xerox and PARC are so substantial as to reduce the transfer of the patents-in-suit to a mere license or to indicate an intent by the parties not to transfer all substantial rights. Because the Agreement expressly granted to Plaintiffs the sole right to sue infringers and recover for past, present, and future damages for infringement, and the Agreement constituted a transfer of all substantial rights under the patents-in-suit, Plaintiffs have both constitutional and prudential standing to sue for infringement of the patents-in-suit. Accordingly, having considered the parties' oral arguments and written submissions, Google's Motion to Dismiss for Lack of Standing (Docket No. 50) is **DENIED**.

**So ORDERED and SIGNED this 21st day of September, 2009.**

_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**